**Walter CLUETT and Antonia G. Capino, M.D., Appellants,**

v.

**The MEDICAL PROTECTIVE COMPANY, Appellee.**

**No. 05–91–00016–CV.**

Court of Appeals of Texas, Dallas.

March 3, 1992.

Rehearing Denied April 1, 1992.

Jose N. Boudreaux, Vic Terry, Warren Hays, David Terry, Dallas, for appellants.

David R. Noteware, Malia A. Litman, Dallas, Laurie Kratky Dore, Austin, for appellee.

Before BAKER, LAGARDE and BURNETT, JJ.

## OPINION

LAGARDE, Justice.

Walter Cluett (Cluett) and Dr. Antonia Capino appeal the summary judgment granted in favor of Medical Protective Company (Medical Protective). They each bring two points of error generally contending that the trial court erred in granting Medical Protective's motion for summary judgment and in denying their motions for summary judgment. We overrule all the points and affirm the trial court's judgment.

## FACTUAL BACKGROUND

Dr. Antonia Capino was the pediatrician for Rose and Walter Cluett's children. Ca-

pino and Rose Cluett became sexually involved, and Cluett sued Capino for alienation of affection.[1] Capino demanded that Medical Protective, her malpractice insurer, defend her and pay any damages assessed against her up to the policy limits. Medical Protective tendered a qualified defense; that is, it agreed to defend her but refused to pay damages because it believed that the claim fell either outside the coverage of the policy or within certain exclusions. Capino refused the qualified defense and obtained her own legal counsel. Medical Protective then brought this declaratory judgment action to determine its legal obligations to defend and to indemnify. While the declaratory judgment action was pending, Cluett and Capino entered into an agreed judgment rendering Capino liable to Cluett for $875,000. Capino then assigned her policy rights to Cluett, and Cluett intervened in the declaratory judgment action. All parties filed motions for summary judgment, and the trial court granted Medical Protective's motion.

In this appeal, we must determine the propriety of the trial court's findings that, as a matter of law: (1) Cluett's suit against Capino for alienation of affection did not fall within the coverage of the policy; (2) Medical Protective had no duty to defend Capino; and (3) Medical Protective did not act in bad faith.

## STANDARD OF REVIEW

In the first point,[2] appellants contend that the trial court erred in granting Medical Protective's motion for summary judgment. The function of a summary judgment is not to deprive a litigant of its right to a full hearing on the merits of any real issue of fact but is to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn*, 151 Tex.

---

1. Although section 4.06 of the Texas Family Code abolishes the cause of action for alienation of affection, that statute did not affect claims for alienation of affection filed before its effective date, September 1, 1987. Act of June 17, 1987, 70th Leg., R.S., ch. 453, § 3, 1987 Tex.Gen. Laws 2030, 2031; *see* Tex.Fam.Code Ann. § 4.06 (Vernon Supp.1992). Because Cluett filed his claim for alienation of affection against Capino

in 1984, his claim was not affected by the family code's abolition of that cause of action.

2. Cluett and Capino filed separate briefs. The first point of error is nearly identical in each brief, but each brings a separate argument in the second point.

412, 416, 252 S.W.2d 929, 931 (1952). The standards for reviewing a motion for summary judgment are:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984); *Wilcox v. St. Mary's Univ.,* 531 S.W.2d 589, 592–93 (Tex.1975). The purpose of the summary judgment rule is not to provide either a trial by deposition or a trial by affidavit but to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that no genuine issue of material fact remains. *Gaines v. Hamman,* 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962).

▮ Under rule 166a of the Texas Rules of Civil Procedure, the plaintiff and the defendant may move simultaneously for summary judgment. When both parties move for summary judgment, each party must carry its own burden, and neither can prevail because of the failure of the other to discharge its burden. *Cove Invs., Inc. v. Manges,* 602 S.W.2d 512, 514 (Tex. 1980). To prevail as movant on summary judgment, a plaintiff must conclusively prove all of the elements of the cause of action as a matter of law. *Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex.1972); TEX. R.CIV.P. 166a. In contrast, a defendant must either (1) disprove at least one element of each of the plaintiff's theories of recovery or (2) plead and conclusively establish each essential element of an affirmative defense, thereby rebutting the plaintiff's cause of action. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 679 (Tex.1979). Because both parties

moved for summary judgment, this Court considers all evidence accompanying both motions in determining whether the trial court properly granted either party's motion. *Edinburg Consol. I.S.D. v. St. Paul Ins. Co.,* 783 S.W.2d 610, 612 (Tex.App.—Corpus Christi 1989, no writ).

## IMPROPER SUMMARY JUDGMENT EVIDENCE

▮ Appellants first contend that the trial court should not have considered Medical Protective's exhibits and depositions filed in support of its motion for summary judgment. Medical Protective states in paragraph I of its motion, "This Motion for Summary Judgment is based upon the pleadings on file, the exhibits and deposition testimony *attached hereto* and the record in the case of *Cluett v. Capino.*" (Emphasis added.) The depositions and exhibits, however, were not attached to the motion but were attached to the brief in support of the motion, which was filed the same day as the motion for summary judgment. Appellants did not assert this procedural defect before the trial court.

Defects in the form of affidavits or attachments will not be grounds for reversal unless specifically pointed out by objection by an opposing party with opportunity, but refusal, to amend. TEX.R.CIV.P. 166a(f). An opponent's failure to object to formal defects in a movant's papers constitutes waiver of those defects. *Youngstown Sheet & Tube Co. v. Penn,* 363 S.W.2d 230, 233–34 (Tex.1962). The public policy underlying this rule requires that procedural errors be raised at the trial court level so that the errors can be corrected without substantial interference with the judicial process. *Jones v. McSpedden,* 560 S.W.2d 177, 180 (Tex.Civ.App.—Dallas 1977, no writ). Because appellants did not object at trial to the placement of the attachments, they waived this complaint.

▮ Appellants next contend that Medical Protective's "live" pleading is insufficient to support its motion for summary judgment. Medical Protective filed its motion for summary judgment on June 1, 1990, and filed its First Amended Original

Petition for Declaratory Judgment on June 29, 1990. The hearing on the motion for summary judgment was held on October 12, 1990, and the trial court issued its order on November 12, 1990. Appellants argue that the trial court should not have considered Medical Protective's first amended petition because it was filed after the motion for summary judgment. Rule 166a(c) provides:

> The judgment sought shall be rendered forthwith if (i) the deposition transcripts, interrogatory answers, and other discovery responses referenced or set forth in the motion or response, and (ii) the *pleadings*, admissions, affidavits, stipulations of the parties, and authenticated or certified public records, if any, *on file at the time of the hearing*, or filed thereafter and before judgment with permission of the court, show that ... there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law....

TEX.R.CIV.P. 166a(c) (emphasis added). Because Medical Protective filed its first amended petition before the hearing, the first amended petition was the live pleading. *See Goswami v. Metropolitan Sav. & Loan Ass'n*, 751 S.W.2d 487, 490–91 (Tex. 1988). Accordingly, the trial court did not err in considering it.

## COLLATERAL ESTOPPEL

■ Appellants contend that Medical Protective is collaterally estopped from challenging the findings of the trial court in Cluett's suit against Capino. The judgment in that case recites the following "conclusion[s] of fact and law":

1. That the Plaintiff, Walter Cluett, his wife and two daughters had a Doctor/Patient relationship with the Defendant, Antonia G. Capino, M.D.

2. That the Doctor/Patient relationship was breached and damages were suffered to the family relationship of the Cluetts.

3. As a proximate result of the Defendant's, Antonia G. Capino, M.D., breach of the duties owed to the Plaintiff, Walter Cluett, he has been damaged in the amount of $875,000.00.

Appellants maintain that Medical Protective is collaterally estopped from challenging these findings.

■ For collateral estoppel to apply, (1) the challenged finding must be essential to the judgment in the prior suit, and (2) the parties must be in privity. *Employers Casualty Co. v. Block*, 744 S.W.2d 940, 943 (Tex.1988); *Edinburg Consol. I.S.D. v. INA*, 806 S.W.2d 910, 913–14 (Tex.App.—Corpus Christi 1991, no writ). When an insurer and its insured take conflicting positions on the issue of coverage, they are not in privity. Collateral estoppel does not bar the insurer from challenging the findings of fact and conclusions of law entered in an agreed judgment between the insured and the party injured by the insured. *Employers Casualty Co.*, 744 S.W.2d at 943; *Edinburg Consol.*, 806 S.W.2d at 914; *see* RESTATEMENT (SECOND) OF JUDGMENTS § 58 (1982). Because the respective positions of Medical Protective and Capino regarding coverage were in conflict, no privity existed between them on this issue. *Employers Casualty Co.*, 744 S.W.2d at 943; *Edinburg Consol.*, 806 S.W.2d at 914. Therefore, Medical Protective is not collaterally estopped from challenging the findings that a doctor-patient relationship existed between any of the Cluetts and Capino and that Capino breached this relationship thereby injuring Cluett.

## DEFECTIVE PLEADINGS

Appellants contend that Medical Protective's pleadings are defective because they do not specifically plead either the applicable policy period or any exception or exclusion to coverage. The first amended petition for declaratory judgment, however, expressly states that the applicable policy period is September 1983 and sets out verbatim the policy provisions excepting or excluding coverage on which Medical Protective relied in its motion for summary judgment. We hold that appellants' arguments are without merit.

## RENDITION OF PROFESSIONAL SERVICES

■ Appellants assert that the trial court could not consider Medical Protec-

tive's argument in its motion for summary judgment that the acts found to have damaged Cluett in the underlying suit "did not arise out of the rendition of professional services" because this statement, which was placed within quotation marks in the motion, is not an exact quotation from the policy. Appellants maintain that Medical Protective should have quoted this statement from the policy:

[T]he Company hereby agrees to DEFEND and PAY DAMAGES, in the name and on behalf of the INSURED or his Estate (a) in any claim for damages at any time filed, based on professional services rendered or which should have been rendered by the insured, ... in the practice of the insured's profession during the term of this policy.

Although we agree that Medical Protective did misquote the policy,[3] we consider its statement to be an accurate paraphrasing of the policy provision at issue under these facts. Only Capino's acts, not her omissions, are at issue in this case. Appellants do not cite any authority requiring exact quotations from the insurance policy, nor do they explain how the paraphrasing is inaccurate as to these facts. Capino stated in her affidavit that "[t]he lawsuit ... made the basis of this suit ... *arises from ... professional services rendered by me in my profession,*" which is similar to Medical Protective's paraphrasing in its motion for summary judgment. (Emphasis added.) We hold that appellants' complaint is without merit.

█ Appellants next contend that the affidavit of Cluett's expert, Ted Cackowski, raised a fact question of whether Cluett's claims against Capino fell within the policy coverage:

Based upon the facts in this case, ... based upon the usual and ordinary construction of insurance policies, industry custom and practice, and subsequent modifications to the policy, it is the opinion of the below signed and clear that the conduct complained of was within the scope of coverage, and was in fact cover-

ed by the policy in effect at all relevant times.

(Emphasis omitted.) The trial court did not err in disregarding Cackowski's affidavit, however, because coverage afforded by an insurance policy is not an area subject to interpretation by expert witnesses. *Keane v. Hawkeye–Security Ins. Co.,* 786 S.W.2d 802, 805 (Tex.App.—Fort Worth 1990, no writ); *St. Paul Ins. Co. v. Rahn,* 641 S.W.2d 276, 284 (Tex.App.—Corpus Christi 1982, no writ).

Appellants also argue that a fact question exists as to which policy of insurance was in force at the time that the underlying cause of action accrued. Appellants contend that the 1978–79 policy applies. Medical Protective maintains that the 1981–82 or 1983–84 policies apply. The relevant difference is that the 1981–84 policies exclude coverage, but not the duty to defend, for willful torts that would otherwise fall within the provisions of the policy, while the 1978–79 policy does not exclude coverage for willful torts. As discussed below, however, this issue is not material to the determination of the case because (1) the same condition precedent applies to all of the policies and Cluett's claim against Capino did not meet that condition precedent, and (2) Medical Protective had reasons independent of the willful-tort exclusion for tendering only a qualified defense to Capino.

█ Finally, appellants contend that a genuine issue of material fact exists about whether Cluett's suit against Capino fell within the coverage of the policy. For Medical Protective to have had any duty under the policy to "defend and pay damages," Cluett's suit against Capino had to be "based on professional services rendered or which should have been rendered by [Capino] ... in the practice of [her] profession...."

█ Appellants maintain that, in determining this question, we must apply the "eight corners" rule; that is, we must look only to the allegations in the petition in the

---

3. Medical Protective misquoted the policy in the motion itself but accurately quoted the policy in its brief in support of the motion for summary judgment.

underlying suit and to the terms of the policy. We agree that the eight-corners rule is the test for determining an insurer's duty to defend; however, we do not agree that it is the proper test for determination of liability coverage. In determining the issue of liability coverage, the court is free to examine the facts of the underlying claim. *See Heyden Newport Chem. Corp. v. Southern Gen. Ins. Co.*, 387 S.W.2d 22, 25 (Tex.1965); *American Alliance Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 154 (Tex.App.—Dallas 1990, writ dism'd).

Turning to the facts of the underlying claim, appellants argue that Cluett's suit against Capino for alienating the affection of Rose Cluett was based on the rendition of Capino's professional services in her practice as a pediatrician because the two women became acquainted when Capino became the pediatrician for the Cluett children. As their pediatrician, Capino had to discuss the children's health with Rose Cluett and obtain consent for their medical treatment from her. According to appellants, Rose Cluett's role as mother of the patients made her a part of the doctor-patient relationship. From these facts, appellants conclude that the sexual relationship between the women that led to Capino's alienation of the affection of Rose Cluett was the result of "professional services rendered … by [Capino] … in the practice of [her] profession…." Medical Protective maintains that the relationship between a pediatrician and a patient's parent is not the type where sexual contact by the doctor with the parent should be con-

strued as involving the rendition of professional services.

Although no Texas court has addressed the issue of when sexual contact by a physician with a patient[4] is construed to be the rendition of professional medical services,[5] several other jurisdictions have considered this issue. The general rule in other jurisdictions is that the nature of the physician-patient relationship determines whether sexual contact should be considered to be based upon the rendition of professional services. These courts have held that sexual contact between physician and patient will not be considered by the courts to have arisen out of the rendition of professional services unless the patient is receiving psychotherapeutic treatment involving the transference phenomenon. The transference phenomenon occurs in the relationships of psychiatrists, psychologists, therapists, and similar professionals with their patients. Transference is "[t]he process whereby the patient displaces [onto] the therapist feelings, attitudes and attributes which properly belong to a significant attachment figure of the past, usually a parent, and responds to the therapist accordingly." *St. Paul Fire & Marine Ins. Co. v. Love*, 459 N.W.2d 698, 700 (Minn.1990) (quoting S. WALDRON-SKINNER, A DICTIONARY OF PSYCHOTHERAPY 364 (1986)). Thus, the therapist, as part of the therapeutic relationship, serves as a substitute for the person with whom the patient has had difficulty communicating or acting out feelings. *See Simmons v. United States*, 805 F.2d 1363, 1365 (9th Cir.1986); *St. Paul Fire & Marine Ins. Co. v. Love*, 447 N.W.2d 5, 8

---

**4.** Whether Rose Cluett was a "patient" was disputed by the parties. Although the argument that Rose Cluett was a patient of Capino's under the facts of this case is tenuous at best, we will assume, without deciding, that a doctor-patient relationship existed between her and Capino.

**5.** The Fort Worth court decided a case involving sexual relations between a psychologist and his patient on statute-of-limitations grounds. *Lenhard v. Butler*, 745 S.W.2d 101 (Tex.App.—Fort Worth 1988, writ denied). The Texarkana court did not reach the issue of a plastic surgeon's liability for negligence for having sexual relations with a patient. *Wall v. Noble*, 705 S.W.2d 727, 731 (Tex.App.—Texarkana 1986, writ ref'd n.r.e.). The Texas Supreme Court has suggested

that a patient may be able to bring a cause of action for medical malpractice against a psychiatrist if the psychiatrist has sexual relations with the patient. *Dennis v. Allison*, 698 S.W.2d 94, 95-96 (Tex.1985). A case involving the liability of a medical partnership for the tortious conduct of one of the partners in alienating the affection of a patient from her husband reached the supreme court, but that case involved only the issue of the liability of the partnership for protecting its patients from the tortious conduct of one of its partners, not whether the alienation of affection was the result of the rendition of professional services. *Kelsey-Seybold Clinic v. MacLay*, 466 S.W.2d 716 (Tex.1971).

(Minn.Ct.App.1989), *aff'd*, 459 N.W.2d 698 (Minn.1990). Because the relationship between the therapist and the patient is crucial to the recovery of the patient, the mishandling of that relationship by the therapist's becoming sexually involved with the patient has been declared by many courts to be malpractice. *See Simmons*, 805 F.2d at 1365–66 (and cases cited therein); *Love*, 459 N.W.2d at 702.

Where the physician-patient relationship does not involve the transference phenomenon as part of the treatment of the patient, courts have held that sexual relations between physician and patient do not involve the rendition of professional services. *E.g.*, *Standlee v. St. Paul Fire & Marine Ins. Co.*, 693 P.2d 1101, 1102 (Idaho Ct.App. 1984) (doctor's sexual assault on minor patient in hospital did not "result from actions necessary in physician's work"); *Hirst v. St. Paul Fire & Marine Ins. Co.*, 683 P.2d 440, 444 (Idaho Ct.App.1984) (doctor's sexual assault on minor patient whom he had drugged did not involve the "providing or withholding of professional services"); *St. Paul Fire & Marine Ins. Co. v. Quintana*, 165 Mich.App. 719, 419 N.W.2d 60, 62 (1988) (electroencephalograph technician's sexual assault on patient was not committed "in connection with professional services rendered or which [should] have been rendered"); *Smith v. St. Paul Fire & Marine Ins. Co.*, 353 N.W.2d 130, 132 (Minn.1984) (doctor's sexual assaults on minor patients in medical clinic did not involve "[provision] or withholding of professional services"); *South Carolina Medical Malpractice Liab. Ins. Joint Underwriting Ass'n v. Ferry*, 291 S.C. 460, 354 S.E.2d 378, 381 (1987) (dentist's taking of "indecent liberties with private parts of" patients did not involve rendition of professional services); *Washington Ins. Guar. Ass'n v. Hicks*, 49 Wash.App. 623, 744 P.2d 625, 627–28 (1987) (chiropractor who had sexual intercourse with patient during treatment session did not do so "in the furnishing of professional medical ... services").

In order for the sexual encounters between Capino and Rose Cluett to have involved the rendition of Capino's professional services, Rose Cluett would have had to have been receiving psychotherapeutic treatment involving the transference phenomenon from Capino. The summary judgment evidence is clear that Rose Cluett never received any type of psychotherapeutic medical care from Capino. The doctor-patient relationship of doctor-of-children to mother-of-children is not the type of relationship in which sexual relations between doctor and patient can be said to involve the rendition of professional services. We therefore hold that, as a matter of law, Cluett's cause of action against Capino was not "a claim for damages ... based on professional services rendered or which should have been rendered by the insured ... in the practice of the insured's profession during the term of this policy." Consequently, Medical Protective's policy did not cover Cluett's cause of action. We overrule appellants' first point.

## MEDICAL PROTECTIVE'S DUTY TO DEFEND CAPINO

■■■ In her second point, Capino contends that the trial court erred in overruling her motion for partial summary judgment, which maintained that Medical Protective was obligated under its policy to defend her, without qualification, in the underlying suit. Texas courts follow the "eight corners" rule when determining an insurer's duty to defend an insured. Under this rule, a court looks only to the pleadings and the insurance policy to determine whether the duty to defend exists. *Feed Store, Inc. v. Reliance Ins. Co.*, 774 S.W.2d 73, 74–75 (Tex.App.—Houston [14th Dist.] 1989, writ denied). Unlike the duty to indemnify, which is based upon the underlying facts that result in the insured's liability, the duty to defend is not affected by the facts of the case ascertained before, during, or after the suit. *American Alliance Ins. Co. v. Frito–Lay, Inc.*, 788 S.W.2d 152, 154 (Tex.App.—Dallas 1990, writ dism'd). Any doubt as to whether the complaint states a covered cause of action must be resolved in the insured's favor. *Heyden*, 387 S.W.2d at 26.

For Medical Protective to have had a duty to defend Capino in Cluett's suit against her, Cluett's claim for damages must have been "based on professional services rendered or which should have been rendered by [Capino] ... in the practice of [her] profession." In his second amended original petition, Cluett alleged:

1. Dr. Capino consciously and knowingly gained the affections of the Plaintiff's spouse, Rose Cluett, to the detriment of the Plaintiff and the family interests;

2. Dr. Capino provided medical services directly to Rose Cluett; and

3. The actions of [Dr. Capino] constitute a breach of the doctor/patient relationship, constitute tortious conduct and are so appalling as to constitute the tort of outrage [sic].

We read Cluett's petition to allege a cause of action for alienation of affection. Alienation of affection is an intentional tort arising out of the impairment of consortium between the spouses of a marriage. *See Turner v. PV Int'l Corp.*, 765 S.W.2d 455, 467 (Tex.App.—Dallas 1988), *writ denied per curiam*, 778 S.W.2d 865 (Tex. 1989); *see also Whittlesey v. Miller*, 572 S.W.2d 665, 666 (Tex.1978). If proven, Cluett was entitled to damages for loss of consortium inflicted by Capino's conscious, knowing, and intentional attempt to gain the affections of Rose Cluett. *Whittlesey*, 572 S.W.2d at 666. However, the claim for damages for loss of consortium arising out of an intentional alienation of affection is not, as a matter of law, one "based on professional services rendered by [Capino] in the practice of [her] profession." Accordingly, we hold that, as a matter of law, Cluett's petition did not allege a claim based on the rendition of professional services. We further hold that Medical Protective conclusively established that it did not act in bad faith in refusing to provide Capino with an unqualified defense. We overrule Capino's second point.

### CLUETT'S BAD-FAITH CLAIMS

We have already held that Medical Protective did not owe Capino either a duty to defend or a duty to indemnify. Conse-

quently, Cluett's bad-faith claims fail as a matter of law. We overrule Cluett's second point.

The trial court's judgment is affirmed.