STATE FARM LLOYDS, Appellant,

v.

C.M.W. and Billy Dean BORUM, Appellees.

No. 05–00–00205–CV.

Court of Appeals of Texas, Dallas.

Aug. 17, 2001.

880

Michael W. Minton, Flowers, Davis, Fraser, Derry Berry, & Van Cleef, Arlington, for Appellant.

Billy Dean Borum, Rosharon, pro se.

Gregory Preston Gorman, Dallas, for Appellee.

Before Justices LAGARDE, O'NEILL, and FITZGERALD.

## OPINION

Opinion By Justice LAGARDE.

State Farm Lloyds (State Farm) appeals the summary judgment declaring it was obligated to indemnify its insured for an underlying judgment that found the insured liable for damages for his actions leading up to and including the sexual molestation of C.M.W. (W.), his minor stepdaughter. State Farm presents two issues for appellate review: (1) whether the trial court erred in granting W.'s motion for summary judgment and (2) whether the trial court erred in denying State Farm's motion for summary judgment. We reverse and render summary judgment for State Farm on the indemnification issue, but reverse and remand the trial court's award of attorneys' fees to W.

### FACTUAL AND PROCEDURAL BACKGROUND

In August 1995, W. sued Billy Dean Borum (Borum) for injuries she sustained as a result of Borum's actions leading up to and including his act of sexually molesting her (the underlying suit). At the time of the incidents alleged in the underlying suit, W. was Borum's thirteen-year-old stepdaughter and lived in the same house with Borum and W.'s mother. W. alleged causes of action against Borum for negligence, breach of right to privacy, negligence per se, breach of fiduciary duty, gross negligence, battery, and intentional infliction of emotional distress. She sought damages for mental and physical injuries associated with all causes of action.

State Farm was Borum's homeowner's insurance carrier at the time of the actions that formed the basis of W.'s claims against Borum. Borum tendered the underlying suit to State Farm for defense. State Farm initially refused to defend Borum. However, shortly thereafter, State Farm provided a defense for Borum in the underlying suit, subject to a reservation of rights letter in which State Farm reserved its right to contest coverage of W.'s claims based upon various policy provisions, including the intentional injury exclusion.

While the underlying suit was pending, but prior to trial, State Farm initiated a separate declaratory judgment action against Borum and W., seeking a judicial determination that none of the homeowner's policies State Farm issued to Borum obligated State Farm to defend or indemnify Borum in the underlying lawsuit.[1] Although State Farm filed a motion for summary judgment in the declaratory judgment action, it was not presented to the court, and no rulings on the merits of

---

1. Borum did not answer State Farm's declaratory judgment action and took no part in the trial court proceedings or this appeal.

State Farm's declaratory judgment action were made prior to trial of the underlying suit.

Only W.'s causes of action for negligence and battery were submitted to the jury. The appellate record does not contain the reporter's record of the trial in the underlying suit. The jury questions and answers, which were incorporated into the judgment of the underlying suit, are crucial to the disposition of this appeal. Accordingly, despite their length, those questions and answers are repeated here verbatim:

QUESTION NO. 1–A

Did the negligence, if any, of BILLY DEAN BORUM during the period of time from September 12, 1989, through September 11, 1990, proximately cause an injury, if any, to [C.M. W.]?

Answer "yes" or "no."

ANSWER: No.

QUESTION NO. 1–B

Did the negligence, if any, of BILLY DEAN BORUM during the period of time from September 12, 1990, through September 11, 1991, proximately cause an injury, if any, to [C.M. W.]?

Answer "yes" or "no."

ANSWER: Yes.

If in answer to Question No. 1–A and/or 1–B you have found the negligence of BILLY DEAN BORUM was a proximate cause of an injury to [C.M. W.], then answer Question No. 2. Otherwise, do not answer Question No. 2.

QUESTION NO. 2

Was the negligence, if any, of BILLY DEAN BORUM "gross negligence?"

Answer "yes" or "no."

ANSWER: Yes.

QUESTION NO. 3

Did BILLY DEAN BORUM commit battery against [C.M. W.]?

Answer "yes" or "no."

ANSWER: Yes.

If in answer to Question No. 3 you have found that BILLY DEAN BORUM committed a battery to [C.M. W.], then answer Question No. 4. Otherwise, do not answer Question No. 4.

QUESTION NO. 4

Did BILLY DEAN BORUM commit the battery, if any, with malice?

Answer "yes" or "no."

ANSWER: No.

If you have answered Question No. 1–A and/or 1–B "yes", then answer Question No. 5. Otherwise, do not answer Question No. 5.

QUESTION NO. 5

What sum of money, if paid now in cash, would fairly and reasonably compensate [C.M.W.] for her injuries, if any, that resulted from the occurrence in question?

Consider each element separately. Do not include damages for one element in any other element. Do not include interest on any amount of damages you find.

Do not include any amount for any condition not resulting from the injuries, if any, which resulted from the occurrence in question.

Do not include any amount for [C.M. W.'s] failure to mitigate, if any.

Answer separately, in dollars and cents, for damages, if any.

A. Physical pain and mental anguish in the past.

ANSWER: $4500.00

B. Physical pain and mental anguish that, in reasonable probability, will be sustained in the future.

ANSWER: $8000.00

C. Loss of earning capacity that, in reasonable probability, will be sustained in the future.

ANSWER: $0.00

D. Medical care in the past.

ANSWER: $4000.00

E. Medical care that, in reasonable probability, will be sustained in the future.

ANSWER: $2000.00

A sixth and final jury question not repeated here concerned exemplary damages. In response to the sixth question, the jury awarded W. exemplary damages in the amount of $65,000 based upon its finding that Borum was grossly negligent; however, because the jury did not find Borum acted with malice, it did not answer the portion of the exemplary damage question related to the battery finding. The jury charge did not include definitions of "injury" or "occurrence." After the jury verdict was returned in the underlying suit, W. filed a counter-petition in the declaratory judgment action. After the judgment was entered in the underlying suit, State Farm filed a first amended motion for summary judgment contending it had no duty to indemnify Borum under the terms of the relevant homeowner's policy.[2] Pursuant to the homeowner's policy at issue, State Farm agreed "[t]o pay on behalf of the Insured all sums which the Insured shall become legally obligated to pay as damages because of bodily injury or property damage...."[3] The policy defined "bodily injury" as "bodily injury, sickness or disease, including death resulting therefrom, sustained by any person." However, the policy excluded from coverage "bodily injury or property damage caused intentionally by or at the direction of the insured."

W. also filed a motion for summary judgment in the declaratory judgment action asserting that, based on the findings and judgment in the underlying suit, the relevant homeowner's policy obligated State Farm to indemnify Borum. The trial court granted W.'s motion and denied State Farm's. This appeal ensued.

## STANDARD OF REVIEW

■ Summary judgment movants have the burden of showing there are no genuine issues of material fact, and that they are entitled to summary judgment as a matter of law. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex.1985). In deciding whether there is a disputed issue of material fact, evidence favorable to the nonmovant must be taken as true, every reasonable inference must be indulged in favor of the nonmovant, and all doubts must be resolved in his or her favor. *Id.*

■ When both parties file motions for summary judgment, each must carry its burden and neither may prevail because of the failure of the other to discharge its burden. *Villarreal v. Laredo Nat'l Bank,* 677 S.W.2d 600, 605 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.). Where there are competing motions for summary judgment, and one is granted and the other denied, the appellate court determines all questions presented to the trial court. *Jones v. Strauss,* 745 S.W.2d 898, 900 (Tex.1988). The reviewing court may affirm the judgment or reverse the judgment and render the judgment the trial court should have rendered, including rendering judgment for the other movant.

---

2. State Farm's defense of Borum in the underlying suit rendered the duty to defend issue moot.

3. Although four separate policies issued by State Farm to Borum were originally implicated in the declaratory judgment action, the parties agree that only one of those policies is relevant to this appeal.

*Id.* If a nonmovant opposing a summary judgment is relying upon an affirmative defense to defeat the summary judgment, the nonmovant must present evidence sufficient to raise an issue of fact on each element of the defense in order to avoid summary judgment. *Brownlee v. Brownlee,* 665 S.W.2d 111, 112 (Tex.1984).

## W.'s Motion for Summary Judgment

In its first issue presented, State Farm argues the trial court erred in granting W.'s motion for summary judgment. In support of its position, State Farm contends: (1) the jury finding of negligence in the underlying lawsuit is not binding on State Farm or determinative of its duty to indemnify; (2) a fact issue exists regarding State Farm's duty to indemnify because of the jury finding that Borum committed battery; and (3) the acts W. alleged as constituting negligence could not have resulted in the required finding of "bodily injury" necessary to recover under the policy.

In response, W. argues State Farm is bound by the jury findings and judgment in the underlying suit that Borum's negligence and gross negligence proximately caused injury to W. and State Farm's duty to indemnify is triggered by the outcome of the underlying suit. W. contends that, in light of the jury findings in the underlying case, State Farm is barred from relitigating the issue of Borum's negligence.

■ The sole basis for W.'s motion for summary judgment was the judgment in the underlying suit. W. argues State Farm is bound by the judgment, and to look behind the judgment would be an impermissible collateral attack on the judgment. Although we disagree with W.'s contention, it is not necessary to look behind the judgment in determining State Farm's first issue. After reviewing the record, we agree with State Farm that the judgment is not determinative of the coverage issue and the judgment itself presents questions of material fact that preclude summary judgment in favor of W.W. did not satisfy her summary judgment burden because she did not conclusively establish that State Farm is obligated to indemnify Borum under the terms of the homeowner's policy.

Contrary to W.'s assertions, the judgment in the underlying suit is not dispositive of the coverage issue simply because the jury found Borum's "negligence" proximately caused "injury" and, based on that "injury" finding, awarded damages for "physical pain and mental anguish." [4] According to the terms of the policy, coverage depends upon Borum's unintentional actions causing "bodily injury." The judgment does not conclusively establish the alleged negligent acts proximately caused "*bodily* injury" (emphasis added).

A close review of the language of the jury charge reveals that damages question 5 was conditioned solely upon the jury having answered "yes" to at least one of the negligence questions (question 1–A and/or 1–B). This means the damages response was not related to the jury's finding of battery and could only have related to the negligence claims. Although this establishes that the jury found that Borum's negligence resulted in "injury," it does not conclusively establish Borum's alleged negligent acts caused "*bodily* injury," as required by the homeowner's policy (emphasis added).

■ In question 5, the subparts combine "physical pain and mental anguish." Thus, it is not clear whether the jury awarded damages as compensation for "physical pain," for "mental anguish," or for a combination of both. A damages

---

4. The jury charge did not define "injury."

award for mental anguish alone resulting from negligent acts would not trigger coverage under the homeowner's policy at issue. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823 (Tex.1997) (holding that "bodily injury" as defined in the policy[5] does not include purely emotional injuries and unambiguously requires an injury to the physical structure of the human body). Because the jury question on damages did not separate physical pain from mental anguish, the judgment does not conclusively establish the jury awarded all, or any part of, the compensatory damages for physical pain. Accordingly, the judgment, including the incorporated jury findings, does not conclusively establish that Borum's negligence caused "bodily injury." Because W. did not satisfy her burden of proof that State Farm was obligated to indemnify Borum as a matter of law, we conclude the trial court erred in granting W.'s motion for summary judgment. We therefore resolve State Farm's first issue in its favor.

### State Farm's Motion for Summary Judgment

In its second issue, State Farm argues the trial court erred in denying its motion for summary judgment. In support of its position, State Farm argues that Borum's actions are not covered by the policy because Texas law infers intent to harm as a matter of law from sexual misconduct with minors, and the inferred intent rule applies to all forms of sexual abuse involving minors. State Farm also argues that Borum's actions are not covered by the policy because: (1) W.'s claims state a cause of action not recognized under Texas law; (2) Borum's actions are intentional as a matter of law; or (3) Borum's actions could not

have caused a loss without combining with a non-covered peril.

In response, W. argues that pursuant to either res judicata or collateral estoppel, State Farm is bound by the findings and judgment in the underlying suit that Borum's negligence proximately caused injury to W.W. contends the findings and judgment in the underlying suit establish State Farm's duty to indemnify and State Farm cannot now relitigate whether Borum's actions were negligent or intentional. W. further argues the inferred intent rule applies only to claims involving sexual molestation and not to the negligent actions alleged in the underlying suit.

### A. State Farm not precluded from challenging coverage.

■ As earlier held, the judgment in the underlying suit does not conclusively establish State Farm's duty to indemnify Borum. Likewise, it does not conclusively negate State Farm's duty to indemnify Borum. Thus, the judgment, standing alone, neither supports nor defeats State Farm's motion for summary judgment. However, we disagree with W.'s contention that State Farm's attempt to contest coverage constitutes a collateral attack on the underlying judgment and, therefore, State Farm's claims are barred by either collateral estoppel or res judicata.

■ A collateral attack is an attempt to avoid the effect of a judgment in a proceeding brought for some other purpose. *Employers Cas. Co. v. Block*, 744 S.W.2d 940, 943 (Tex.1988), *disapproved of on other grounds by State Farm Fire. & Cas. Co. v. Gandy*, 925 S.W.2d 696 (Tex.1996). Liability and coverage are separate and distinct issues. *Hargis v. Md. Am. Gen. Ins. Co.*, 567 S.W.2d 923, 927 (Tex.Civ.App.—

---

5. The policy at issue in *Cowan* defined "bodily injury" as "bodily harm, sickness or disease." *Cowan*, 945 S.W.2d at 820.

Eastland 1978, writ ref'd n.r.e.). In this declaratory judgment action, State Farm is not attempting to avoid the effect of the underlying liability judgment against Borum; rather, it is contesting coverage of Borum's conduct. Determination of the coverage issue will in no way avoid the effect of the underlying liability judgment against Borum. The fact that it will affect who is responsible for paying that judgment is irrelevant. Accordingly, State Farm's challenge of coverage in this declaratory judgment suit is not a collateral attack on the liability judgment against Borum. *See Block,* 744 S.W.2d at 943.

Res judicata, or claim preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit. *Barr v. Resolution Trust Corp.,* 837 S.W.2d 627, 628 (Tex. 1992). Res judicata requires proof of the following elements: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based upon the same claims that were raised or could have been raised in the first action. *Amstadt v. United States Brass Corp.,* 919 S.W.2d 644, 652 (Tex.1996). Collateral estoppel, or issue preclusion, prevents relitigation of particular issues already resolved in a prior suit. *Barr,* 837 S.W.2d at 628. For collateral estoppel to apply, (1) the challenged finding must be essential to the judgment in the prior suit and (2) the parties must be in privity. *Cluett v. Med. Prot. Co.,* 829 S.W.2d 822, 826 (Tex.App.—Dallas 1992, writ denied) (citing *Block,* 744 S.W.2d at 943).

Both res judicata and collateral estoppel require that the parties involved in the second lawsuit be the same parties, or in privity with the parties, involved in the first lawsuit. "People can be in privity in at least three ways: (1) they can control an action even if they are not parties to it; (2) their interests can be represented by a party to the action; or (3) they can be successors in interest, deriving their claims through a party to the prior action." *Amstadt,* 919 S.W.2d at 653. However, Texas law is clear that "[w]hen an insurer and its insured take conflicting positions on the issue of coverage, they are not in privity." *Cluett,* 829 S.W.2d at 826; *see also Block,* 744 S.W.2d at 943 ("[I]n light of the fact that the respective positions of CSI and Employers Casualty regarding coverage were in conflict, no privity existed between the parties, thus precluding the application of the collateral estoppel doctrine.").

In a letter dated November 8, 1995, State Farm notified Borum it would provide him a defense against W.'s claims; however, the letter stated that State Farm expressly reserved its right to deny coverage under several specifically enumerated policy provisions, including the intentional injury exclusion. The letter also notified Borum that State Farm reserved its right to file a declaratory judgment action to seek a judicial determination of its obligations under the policy. The letter further stated:

> No action up until this time, nor any action hereafter taken by State Farm, should be considered an unconditional acceptance of coverage or admission of liability by State Farm, nor should any such action be treated as a waiver or an estoppel to assert the rights of State Farm under your homeowner's policy.

Because State Farm provided a defense subject to a reservation of rights letter, in which State Farm sufficiently notified Borum that it maintained its right to contest coverage of the claims, a conflict of interest existed, and there was no privity be-

tween State Farm and Borum in the underlying suit.[6]

W. argues that State Farm's interests in the underlying suit were fully protected and that it directed the litigation by virtue of being copied on letters, attending depositions, and discussing available defenses for Borum. Such actions do not establish privity. State Farm adequately notified Borum that it reserved its right to contest coverage. Because of the conflict of interest in connection with the coverage issue, State Farm's interests were not the same as Borum's, and they were not represented in the underlying suit. *See Block,* 744 S.W.2d at 943. Additionally, Borum was aware of the conflict, and he accepted State Farm's provision of a defense to him subject to its reservation of rights.

W. repeatedly argues that, because the underlying judgment was entered after a fully adversarial trial, State Farm cannot contest the findings and it is precluded from asserting its coverage defenses. W. distinguishes the cases relied upon by State Farm, noting those cases involved agreed judgments. We disagree with W.'s argument. Although it is true some of the cases relied upon by State Farm involved agreed judgments, other Texas courts have held that an underlying judgment, even after litigation, does not render the insurer bound by the findings for coverage purposes.

In *State Farm Fire & Casualty Co. v. Taylor,* 832 S.W.2d 645 (Tex.App.—Fort Worth 1992, writ denied), the Fort Worth Court of Appeals reversed a summary judgment against the insurer in a procedurally similar situation. In *Taylor,* the insured was sued for wrongful death after a shooting in which the insured shot

and killed the decedent. *Id.* at 647. At trial of the wrongful death lawsuit, the appellees (relatives of the decedent and assignees of the rights of the insured) obtained a judgment against the insured in excess of the policy limits based upon findings of the insured's negligence in shooting the decedent. *Id.* Thereafter, the appellees sought a declaration the insurer was obligated to pay the judgment. *Id.* The insured moved for summary judgment alleging the insurer was estopped from proceeding with its declaratory judgment action because of assertions it made in its unsuccessful attempts to intervene in the wrongful death lawsuit, including its assertion that refusal to allow the intervention would leave the insured with no other remedy in law. *Id.* The insured further argued that the insurer's failure to have the declaratory judgment action resolved pretrial and its failure to settle prejudiced him. *Id.* The insurer responded by asserting its right to have properly determined the issue of whether the insured intentionally shot the decedent. *Id.* The appellees also filed a motion for summary judgment, arguing the insurer violated article 21.21 of the Texas Insurance Code by not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability had become reasonably clear. *Id.* at 649.

The court held the insurer was not estopped by any of its previous arguments from asserting in the declaratory judgment action that its insured's actions were intentional rather than negligent. *Id.* at 648. Additionally, the court held the insurer's liability never became reasonably clear, as a matter of law, in view of its

6. In her brief, W. relies heavily on *Massachusetts Bonding Insurance Co. v. Orkin,* 416 S.W.2d 396 (Tex.1967), to support her argument that State Farm is bound by the judgment in the underlying case. However, the insurer in *Orkin* did not defend its insured in the underlying liability lawsuit *subject to a reservation of rights. Id.* at 400–01. Accordingly, the principles from *Orkin* do not apply to this case.

contention that its insured's actions were intentional; therefore, it did not violate article 21.21. *Id.* at 650. Thus, in *Taylor,* the findings of negligence in the underlying wrongful death case were not determinative of the coverage issue, and the insurer was not precluded from asserting its coverage defense that its insured's actions were intentional, rather than negligent, despite the findings of negligence after an adversarial trial in the wrongful death action. *See also Hargis,* 567 S.W.2d at 928 (insurer not bound by negligence findings after trial of underlying lawsuit because such findings were not necessary to the judgment); *United States Fire Ins. Co. v. Deering Mgmt. Group, Inc.,* 946 F.Supp. 1271, 1280 (N.D.Tex.1996) (insurer not precluded from relitigating course and scope of employment issue in coverage dispute, despite finding in underlying suit that plaintiff was acting in course and scope of employment, because issue was not actually litigated for coverage purposes).

■■■ Unless the required elements of res judicata or collateral estoppel are satisfied, State Farm may assert its properly reserved coverage defenses, regardless of whether the underlying judgment was an agreed judgment or a judgment rendered after a fully adversarial trial to a fact finder. In this case, it is clear that Borum and State Farm were not in privity. Accordingly, W.'s arguments that State Farm's coverage defenses are barred by res judicata or collateral estoppel are without merit, and State Farm is not precluded from asserting its coverage defenses.

**B. Application of the inferred intent rule.**

■■■ Generally, a person's intent to injure is a question of fact. *State Farm Fire & Cas. Co. v. S.S.,* 858 S.W.2d 374, 378 (Tex.1993). However, Texas has joined the majority of jurisdictions in adopting the inferred intent rule, which

states intent to injure will be inferred as a matter of law in cases involving sexual abuse of a minor. *See, e.g., Maayeh v. Trinity Lloyds Ins. Co.,* 850 S.W.2d 193, 196 (Tex.App.—Dallas 1992, no writ) (intent to injure inferred as a matter of law to claims of sexual molestation of insured's minor stepdaughter regardless of insured's claim he did not intend to harm her); *J.E.M. v. Fid. & Cas. Co. of N. Y.,* 928 S.W.2d 668, 675 (Tex.App.—Houston [1st Dist.] 1996, no writ) (intent to injure inferred as a matter of law to intentional and negligent claims arising out of sexual abuse of insured's minor stepdaughter and minor step-grandson); *Allen v. Auto. Ins. Co.,* 892 S.W.2d 198, 199 (Tex.App.—Houston [14th Dist.] 1994, no writ) (intent to injure inferred as a matter of law to claims for injuries caused by insured's intentional, negligent, and grossly negligent acts in connection with insured's repeated sexual molestation of minor).

State Farm argues the inferred intent rule applies to Borum's alleged negligent acts because the inferred intent rule applies to all forms of sexual abuse involving minors. According to State Farm, all of Borum's actions were intentional as a matter of law because they were geared toward his ultimate goal of sexually molesting W. Thus, State Farm argues, intent to harm is inferred from all Borum's actions notwithstanding their being labeled as negligent.

In response, W. argues the inferred intent rule applies only to sexual molestation and not to negligent exposure or other negligent acts that W. characterizes as "boundary violations." "Boundary violations," W. contends, do not implicate the inferred intent rule, because those acts were separate and distinct from the physical sexual molestation of fondling and intercourse. In support of this contention, W. distinguishes the cases relied upon by

State Farm for the reason they all involved physical sexual molestation and not "boundary violations." Additionally, W. cites an unpublished opinion from this court, *Vesecky v. Employers Casualty Co.,* No. 05–92–02849–CV, 1994 WL 9106 (Tex. App.—Dallas January 7, 1994, no writ), in support of her contention that the inferred intent rule does not apply to the negligent exposure claims alleged in the underlying suit.[7]

▮▮▮▮▮ Initially, we note this appeal involves State Farm's duty to indemnify, which is separate and distinct from the duty to defend. *Farmers Tex. County Mut. Ins. Co. v. Griffin,* 955 S.W.2d 81, 82 (Tex.1997). Typically, the duty to defend is determined based upon the allegations made in the underlying suit considered in light of the policy provisions, and the duty to indemnify is determined from the actual underlying facts that result in the insured's liability. *J.E.M.,* 928 S.W.2d at 673 (citing *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.,* 387 S.W.2d 22, 24–25 (Tex.1965) and *Cluett,* 829 S.W.2d at 828). The duty to defend is broader than the duty to indemnify, and where there is no duty to defend under the terms of the policy, there can be no duty to indemnify. *See Folsom Inv., Inc. v. Am. Motorists Ins. Co.,* 26 S.W.3d 556, 559 (Tex.App.— Dallas 2000, no pet.). Sometimes it is necessary to defer resolution of the indemnity issue until after resolution of the liability issue, because coverage may depend upon facts actually proved in the lawsuit. *Griffin,* 955 S.W.2d at 84. However, in other cases, the court may decide the indemnity issue before judgment is rendered in the underlying suit, if "the insurer has no duty to defend *and the same reasons*

*that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." Id.See also Folsom,* 26 S.W.3d at 559 ("If the underlying petition does not state factual allegations sufficient to invoke the duty to defend, then even proof of all of those allegations could not invoke the insurer's duty to indemnify.").

The appellate record does not contain the reporter's record of the trial in the underlying suit, and the judgment itself is not determinative of the coverage issue. Consequently, we look to the factual allegations of the petition to determine whether those facts give rise to a duty to defend. If they do not, then as a matter of law they cannot impose a duty to indemnify, and State Farm would be entitled to rendition of summary judgment. If, however, the facts alleged in W.'s petition give rise to a duty to defend, then State Farm would only be entitled to a remand to the trial court to determine whether it has a duty to indemnify Borum for the judgment entered against him in the underlying suit in light of this Court's opinion.

In her petition, W. alleged Borum committed the following specific acts of negligence: exposed himself nude to W.; exposed his genitals in an aroused state in the presence of W.; threatened to commit suicide if W. told anyone about his conduct with W.; encouraged W. to lie to her physicians to hide Borum's sexual conduct and thus prevented her from getting proper medical assistance, intervention, and counseling; failed to report child abuse as required by law; and failed to seek counseling to prevent himself from continuing to commit the alleged acts. The petition fur-

---

**7.** Unpublished opinions have no precedential value and must not be cited as authority by counsel. TEX.R.APP. P. 47.7. Although not citing it as "authority," W. "brings the court's attention to" *Vesecky,* which she de-

scribes as the only known opinion in Texas jurisprudence concerning negligent exposure. In either event, we are constrained by the appellate rules from considering *Vesecky* as authority.

ther alleges that, after engaging in such conduct for a period of time, Borum began physically sexually molesting W., initially by fondling her and forcing her to fondle him, and ultimately by forcing W. to have sexual intercourse with him.

In order for State Farm to prevail on its motion for summary judgment, it must establish as a matter of law that it has no duty to indemnify Borum under the terms of the policy. To come within the intentional injury exclusion of the policy, State Farm must conclusively establish Borum committed each of the alleged acts with the intent to injure, regardless of their label. *See Maayeh,* 850 S.W.2d at 195 ("If the petition only alleges facts that, even if true, are excluded by the policy, the insurer does not have a duty to defend regardless of the legal theories involved in the case.") There is no bright-line rule for determining whether intent to harm should be inferred as a matter of law. *S.S.,* 858 S.W.2d at 379. To make such a determination, each specific set of facts must be considered on a case-by-case basis. *Id.* We turn now to that task.

We first address W.'s claims of negligence based upon Borum's threat to commit suicide if W. told anyone about his conduct with W. and encouraging W. to lie to her physicians, thus preventing her from getting proper medical assistance, intervention, and counseling. The very nature of these allegations reveals that Borum was aware of the wrongful nature of his conduct and that such conduct would harm W. If these allegations are tied to the sexual battery of W., then they are related and interdependent on the sexual molestation and, pursuant to Texas law, the inferred intent rule applies.[8] *Folsom,* 26 S.W.3d at 559. If these allegations are, instead, tied to the alleged "boundary vio-

lations," then the fact that Borum threatened to commit suicide if W. told anyone about the conduct and encouraged W. to lie to her physicians reveals the "boundary violations" themselves were so extreme or outrageous that an intent to harm can be inferred as a matter of law, despite the fact these actions did not involve sexual contact. *See Maayeh,* 850 S.W.2d at 196 (citing *S.S. v. State Farm Fire & Cas. Co.,* 808 S.W.2d 668, 670–71 (Tex.App.—Austin 1991), *aff'd* 858 S.W.2d 374 (Tex.1993)). Accordingly, in this case, we infer intent to harm from Borum's threats to commit suicide and his encouraging W. to lie to her doctors.

We next address W.'s claims that Borum negligently failed to report child abuse as required by law and failed to seek counseling in order to prevent himself from continuing to commit the alleged acts. W. specifically alleged Borum failed to report child abuse as required by law under section 261.109 of the Texas Family Code. Section 261.109 states "[a] person commits an offense if the person has cause to believe that a child's physical or mental health or welfare has been or may be adversely affected by abuse or neglect and knowingly fails to report as provided in this chapter." Tex. Fam.Code Ann. § 261.109 (Vernon 1996).

If this claim is based upon Borum's sexual molestation of W., a claim of negligent failure to report such conduct is the same as a claim of negligent failure to report one's own pedophilia. Such a claim does not give rise to either the duty to defend or the duty to indemnify under Texas law. In *Commercial Union Insurance Co. v. Roberts,* 7 F.3d 86 (5th Cir. 1993), the petition alleged the insured was negligent in failing to obtain treatment for pedophilia and in failing to have an adult

---

8. We conclude it is clear from W.'s petition that these claims are tied to the sexual molestation claims; however, because this review is in a summary judgment context, we proceed with the possibility the claims may also be tied to the so-called "boundary violations."

present at times of risk. *Id.* at 87. In holding the insurer had no duty to defend or indemnify, the court stated that the negligent and intentional allegations were related and interdependent. *Id.* at 89–90 (applying Texas law); *see also J.E.M.,* 928 S.W.2d at 671, 674–75 (no duty to defend claims of negligence in failing to inform other responsible adults of insured's sexual misconduct and in failing to seek professional help for such conduct); *Allstate Ins. Co. v. Mauldin,* 869 F.Supp. 478, 479–80 (W.D.Tex.1994) (no duty to defend or indemnify insured against claim of negligent failure to obtain treatment for pedophilia in connection with sexual molestation).

Further, if W.'s negligence claim based on Borum's failure to report child abuse under section 261.109 is based upon the alleged "boundary violations," such claim cannot give rise to a duty to defend or indemnify as a matter of law. Section 261.109 states that a duty to report abuse arises when a person has cause to believe a child's physical or mental health has been or may be adversely affected. TEX. FAM. CODE ANN. § 261.109. Thus, Borum would have had no duty under section 261.109 unless he knew his so-called boundary violations would harm W. And if Borum knew his boundary violations would harm W., as a matter of law State Farm has no duty to either defend or indemnify Borum under the intentional injury exclusion of the policy. The same analysis applies to W.'s

claim that Borum negligently failed to seek counseling in order to prevent himself from committing the alleged acts.

■ We next address what W. characterizes as "boundary violations": Borum's repeatedly exposing himself nude to W. and exposing his genitals in an aroused state in her presence. W. argues that no Texas court has inferred an intent to harm based on negligent exposure.[9] We have found no Texas authority based on the same or similar facts alleged in this case: a stepfather repeatedly exposing himself nude and in an aroused state in front of his minor stepdaughter, as a precursor to forced sexual fondling and, ultimately, forced sexual intercourse.

In this case, intent to harm can be inferred as a matter of law from Borum's actions in repeatedly exposing himself nude and in an aroused state in front of his minor stepdaughter when those actions ultimately culminated in forced sexual fondling and forced sexual intercourse. When such boundary violations are a precursor to, and ultimately result in, forced sexual contact with a minor, the actions are not separate and independent from the physical sexual contact. The facts alleged in this case were sufficiently extreme and outrageous to infer intent to harm from all of the allegations, regardless of the legal theories attached to them. *See Maayeh,* 850 S.W.2d at 196.[10] Under these facts,

9. The *Vesecky* opinion cited by W. has no precedential value. However, even if it were appropriate authority, the petition at issue in *Vesecky* did not reflect the plaintiff was a minor. *Vesecky,* No. 05–92–02849–CV, slip. op. at 4 n. 3, 1994 WL 9106, at *2 n. 3. Further, the *Vesecky* opinion holds that an allegation of negligent exposure "without more" does not fall within the policy's intentional injury exclusion. *Id.* slip op. at 5, 1994 WL 9106 at *2. The allegations in this case go beyond negligent exposure.

10. In the underlying suit, W. moved for partial summary judgment on Borum's affirma-

tive defense of parental immunity. A successful parental immunity defense would have disposed of W.'s negligence claims and defeated coverage under Borum's homeowner's policy. In her motion, W. stated "the allegations are that Defendant abused his authority role in order to benefit sexually. He exposed himself while nude. Bathed in front of Plaintiff. Fondled Plaintiff's breasts and vagina and had intercourse with her!" Thus, W.'s own pleadings in the underlying suit reflect that Borum's actions with his minor stepdaughter were taken with the intent to benefit sexually.

intent to harm can be inferred by Borum's repeated exposure of himself nude and in an aroused state to his minor stepdaughter, upon whom he ultimately forced sexual intercourse.[11]

Because intent to harm is inferred from all of Borum's alleged actions, State Farm had no duty to defend Borum against the claims asserted. Although resolution of the duty to defend is now moot regarding the expenses incurred, it is dispositive of State Farm's duty to indemnify because, where there is no duty to defend, there is no duty to indemnify. Accordingly, State Farm is entitled to summary judgment as a matter of law on the issue of its duty to indemnify Borum for the judgment entered against him in the underlying suit.

### C. W.'s additional affirmative defenses fail as a matter of law.

In addition to her res judicata and collateral estoppel defenses, W. argues that State Farm's summary judgment is defeated by her affirmative defenses of waiver, quasi-estoppel and laches. In order for W. to defeat State Farm's motion for summary judgment, W. must establish the existence of a genuine issue of material fact on each essential element of one of her affirmative defenses. *Brownlee*, 665 S.W.2d at 112.

■ W. argues that State Farm did not properly reserve its rights, thus waiving its coverage defenses. In support of this defense, W. focuses on State Farm's initial refusal to provide a defense. Shortly thereafter, however, State Farm did provide a defense for Borum subject to a reservation of rights letter. The reservation of rights letter sufficiently reserved State Farm's right to contest coverage despite its providing Borum a defense. W.

does not direct us to any case law, nor have we located any, suggesting that State Farm's initial refusal to provide a defense somehow nullifies its reservation of rights when it later provides a defense. State Farm's initial refusal to provide a defense is irrelevant. *See Taylor*, 832 S.W.2d at 648 (insurer defending under a reservation of rights letter reserves to itself all of its policy defenses). Accordingly, we hold that W. has not established a genuine issue of material fact on her waiver defense.

■ W. also argues that State Farm's delay in filing its declaratory judgment action waived its right to contest coverage. In support of this argument, W. points out that, although she filed her petition on August 31, 1995, State Farm did not file its declaratory judgment action until March 13, 1998. The record reflects that, on W's motion, the underlying suit was stayed from December 1995 through March 1997 while Borum's criminal case was pending. W. cites *Griffin* and *Gandy* to support her argument that State Farm was required to accept coverage or make a good faith effort to resolve coverage before adjudication and that, by failing to do so, State Farm essentially accepted coverage. Neither *Griffin* nor *Gandy* supports W.'s position. In *Gandy,* the insured was sued for sexual abuse of his stepdaughter. *Gandy*, 925 S.W.2d at 697. Without notice to the insurer, the insured and his stepdaughter entered into an agreed judgment against the insured for six million dollars. *Id.* at 698. The court held that an insured's assignment of his claims against the insurer is invalid if (1) it is made prior to adjudication of the claim in a fully adversarial trial, (2) the insurer has tendered a defense, and (3) *either* the insurer has

---

11. W.'s argument that the Texas cases which infer intent to injure all involve sexual molestation is correct; however, this case also involves sexual molestation. We are not holding that the inferred intent rule would apply to a claim of negligent exposure that did not culminate in sexual molestation of a minor.

accepted coverage *or* made a good faith effort to adjudicate coverage prior to the adjudication of the claim. *Id.* at 714. *Griffin* involved the justiciability of the duty to indemnify prior to the adjudication of the underlying claim. *Griffin,* 955 S.W.2d at 84. The court held that in cases where the same facts that negate the duty to defend also negate the duty to indemnify, the duty to indemnify is justiciable before the insured's liability is determined. *Id.* Neither of these cases stands for the proposition that a sufficient reservation of rights is waived if the coverage issue is not determined prior to trial of the underlying claim.

▆▆▆ Additionally, the coverage issue is often not even ripe for adjudication prior to the conclusion of the trial of the underlying claims. Unless the same facts that negate the duty to defend also negate the duty to indemnify, "a declaratory judgment as to the insurer's liability in the event of a judgment that might later be rendered in another case between a third party and its insured is purely advisory in nature and therefore beyond the power of the district court to render." *Taylor,* 832 S.W.2d at 648 (citing *Firemen's Ins. Co. v. Burch,* 442 S.W.2d 331, 333 (Tex.1968)); *see also Griffin,* 955 S.W.2d at 84. In *Taylor,* the appellant made an argument similar to W.'s argument in this case-that the insurer's remedy was to have the declaratory judgment action on the coverage issue resolved *prior to* the underlying wrongful death case. *Taylor,* 832 S.W.2d at 647. In rejecting that argument, the court held the insurer was "not estopped by its failure to have the declaratory judgment determined before the wrongful death action brought against its insured from now asserting that its insured's actions were intentional." *Id.* at 648. W.'s argument that State Farm waived its right to contest coverage by its delay in filing its declaratory judgment action is without merit.

▆▆▆ W. further argues that, by proceeding to trial in the underlying suit, State Farm waived its right to later contest the judgment in the underlying suit. As earlier stated, liability and coverage are separate and distinct issues. *Hargis,* 567 S.W.2d at 927. State Farm's coverage dispute does not "contest" W.'s underlying judgment against Borum. Moreover, trying the underlying suit before adjudicating the coverage issue does not estop an insurer from contesting coverage, assuming it properly reserved its right to do so. Thus, W.'s defense that State Farm cannot contest the judgment because the underlying suit proceeded to trial is without merit.

W. has not satisfied her burden of proof on any of her asserted defenses; consequently, she cannot defeat State Farm's summary judgment on defensive grounds.

We hold the trial court erred in denying State Farm's motion for summary judgment. We render judgment that W. take nothing on her claims against State Farm. We resolve State Farm's second issue in its favor.

### ATTORNEYS' FEES

In connection with its first issue presented, State Farm argues that because the trial court erred in granting W.'s summary judgment, the trial court's award of attorneys' fees to W. was not equitable and just, and the trial court abused its discretion in awarding such fees. W. responds that a trial court's award of attorneys' fees in a declaratory judgment action is within the trial court's discretion and is not dependent on prevailing party status.

▆▆▆▆ The Texas Uniform Declaratory Judgments Act provides that a trial court may award reasonable and necessary attorneys' fees as are equitable and just. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1997). A trial court's grant or

**894**

denial of attorneys' fees in a declaratory judgment action is, therefore, within the trial court's discretion and will not be reversed on appeal unless the complaining party clearly shows the trial court abused its discretion. *Oake v. Collin County,* 692 S.W.2d 454, 455 (Tex.1985). A trial court abuses its discretion if its decision is arbitrary, unreasonable, or if the court acted without reference to guiding legal principles. *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex.1998). Thus, in reviewing the trial court's award of fees to W., we must determine whether State Farm has shown the trial court abused its discretion by awarding attorneys' fees when there was insufficient evidence that the fees were reasonable and necessary, or when the award was inequitable or unjust. *Abraxas Petroleum Corp. v. Hornburg,* 20 S.W.3d 741, 762–63 (Tex.App.—El Paso 2000, no pet.) (citing *Bocquet,* 972 S.W.2d at 21).

■ It is appropriate to award attorneys' fees to the prevailing party in a declaratory judgment action if the trial court believes such fees to be reasonable and necessary and the award of such fees to be equitable and just. TEX. CIV. PRAC. & REM.CODE ANN. § 37.009. However, the trial court is not required to award attorneys' fees to the prevailing party in a declaratory judgment action. *See Barshop v. Medina County Underground Water Conservation Dist.,* 925 S.W.2d 618, 637–38 (Tex.1996). Additionally, a trial court may, in its discretion, award attorneys'

fees to the nonprevailing party in a declaratory judgment action. *Id.*

State Farm's argument is that, because the trial court's grant of summary judgment to W. was erroneous, and thus reversible, the award of fees to W. was not equitable or just. In support of its argument, State Farm cites *Peterson v. Mayse,* 993 S.W.2d 217 (Tex.App.—Tyler 1999, pet. denied). In *Peterson,* the Tyler Court of Appeals held that, because the trial court erred in its judgment against the appellant, it was not equitable and just to award attorneys' fees to the appellee. *Id.* at 222. The *Peterson* court cites no authority for this statement.[12]

■ Texas law does not require prevailing party status as a prerequisite to an award of attorneys fees in a declaratory judgment action. In *Barshop,* the Texas Supreme Court reversed and remanded an award of attorneys' fees to the prevailing party at trial when that party lost on appeal. *Barshop,* 925 S.W.2d at 637–38. However, in that case, the trial court's award of fees was pursuant to the party's status as the prevailing party. *Id.* at 637. In this case, the record does not reflect the trial court's basis, or bases, for granting W. attorneys' fees. State Farm does not direct us to anything in the record that establishes the fees awarded to W. were inequitable or unjust for any reason other than W.'s loss on appeal.

■ Although it is true that a trial court may award attorneys' fees to the

---

12. At least one other court of appeals has made a similar holding. In *Dorman v. Arnold,* 932 S.W.2d 225 (Tex.App.—Texarkana 1996, no writ), the court reversed the trial court's award of attorneys' fees to the prevailing party at trial as "clearly wrong and unjust" after that party lost on appeal. *Id.* at 229. In doing so, the court cited *Spiller v. Spiller,* 901 S.W.2d 553 (Tex.App.—San Antonio 1995, writ denied), for the proposition that "where attorney's fees are contingent on success, the

award should be read to implicitly require success." *Dorman,* 932 S.W.2d at 229. The *Spiller* court stated that "[a]lthough the judgment before us is not specific that attorney's fees are contingent upon the appellant's success on appeal, we conclude that the award implicitly requires success in order to recover fees." *Spiller,* 901 S.W.2d at 560. However, the issue in *Spiller* was the award of attorneys' fees for the appeal, not for trial. *See id.*

nonprevailing party in a declaratory judgment action, the trial court did not do so in this case. Here, the trial court awarded fees to the prevailing party at trial. However, because the record does not reflect the trial court's reasons for its award of fees to W., there is no evidence to indicate whether the trial court's award of fees would also be equitable and just in light of our opinion in this case. Accordingly, we reverse the portion of the judgment awarding attorneys' fees to W. and remand the issue of attorneys' fees to the trial court for its reconsideration in light of this opinion.